OPINIONS OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Taxation*, Income tax. *Constitutional Law*, Taxation.

A majority of the Justices were of opinion that legislation providing for
    personal income tax exemptions which would progressively decrease as
    a taxpayer's total income increased was permissible under provisions of
    art. 44 of the Amendments to the Massachusetts Constitution, requir-
    ing that tax on income be levied at a "uniform rate," but authorizing
    the Legislature to grant "reasonable exemptions." [1223-1230] LIACOS,
    ABRAMS, & LYNCH, JJ., were of the contrary opinion. [1230-1233]

On June 23, 1982, the Justices submitted the following
answers to a question propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit their answer to a question set forth in an
order adopted by House of Representatives on February 22,
1982, and transmitted to the Justices on February 23, 1982.
The order recites that the Legislature's Joint Committee on
Taxation has reported a bill (House Bill No. 5528), which, if
enacted, would grant certain exemptions from the taxation
of income and "would implement what the committee
deems to be a system of 'reasonable exemptions' pursuant to
[art. 44] of the Amendments to the Constitution of the Com-
monwealth." The order further states that "[t]he proposed
system [of exemptions] is triggered in a manner similar to the
currently existing and historically sound low income exemp-
tion." Acknowledging that "[s]ome doubt exists as to the
constitutionality of said bill, if enacted into law," the order
asks for the opinion of the Justices on the following question:

"Is it constitutionally competent for the General Court to enact House Bill No. 5528 which would provide for a system of low income vanishing exemptions from the state income tax under the provisions of Article XLIV of the Amendments to the Constitution of the Commonwealth of Massachusetts?"[1]

The bill proposes to strike out G. L. c. 62, § 5 (*a*), as appearing in St. 1973, c. 723, § 2, and to substitute a new § 5 (*a*). The present § 5 (*a*) provides an exemption from Massachusetts income taxes "if the total income of the taxable year does not exceed [$3,000] for a single individual or [$5,000] in the aggregate for a husband and wife. No tax shall be imposed under this chapter which shall reduce such total income below [$3,000] and [$5,000] respectively."

The proposed new § 5 (*a*) sets forth schedules of "vanishing exemptions," that is, exemptions that progressively decrease as total income increases. Separate schedules are proposed for single taxpayers, married taxpayers filing jointly, and married taxpayers filing separately. The proposed bill would not repeal the regular exemptions granted by G. L. c. 62, § 3 B (*b*). For the purposes of analysis of the question propounded to us, we need only set forth one such schedule. The schedule for an individual taxpayer grants exemptions from taxation as follows:

---

[1] We have received briefs from various sources, to whom we express our appreciation. Briefs generally supporting the constitutionality of House Bill No. 5528 were filed by (a) Michael E. Capuano, Chief Legal Counsel to the Joint Committee on Taxation, (b) the Massachusetts Tax Reform Association, Massachusetts Fair Share, the Service Employees International Union, Local 509, the Coalition for Basic Human Needs, and the Massachusetts Teachers Association, (c) Mr. Robert J. McGee, and (d) Mr. Oliver Oldman and Ms. Joan M. Youngman. A brief discussing the issue without advocating a particular answer was filed on behalf of the Taxation Section of the Massachusetts Bar Association. A brief urging the unconstitutionality of House Bill No. 5528 was filed on behalf of the New England Legal Foundation.

| "If total income, as defined herein, is greater than | | But does not exceed | | An exemption in the amount of |
|---|---|---|---|---|
| $     0 | — | $ 3,000 | . . . . . | $3,000 |
| 3,000 | — | 6,000 | . . . . . | 2,700 |
| 6,000 | — | 9,000 | . . . . . | 2,400 |
| 9,000 | — | 12,000 | . . . . . | 2,100 |
| 12,000 | — | 15,000 | . . . . . | 1,800 |
| 15,000 | — | 18,000 | . . . . . | 1,500 |
| 18,000 | — | 21,000 | . . . . . | 1,200 |
| 21,000 | — | 24,000 | . . . . . | 900 |
| 24,000 | — | 27,000 | . . . . . | 600 |
| 27,000 | — | 30,000 | . . . . . | 300 |
| 30,000 | — | unlimited | . . . . . | zero"[2] |

The question propounded to us concerns the application of art. 44 of the Amendments to the Constitution of the Commonwealth, which is set forth in full in the margin.[3] Article 44 requires that a tax on income must "be levied at a

---

[2] The schedule for married taxpayers filing jointly grants an exemption of $5,000 if total income does not exceed $5,000, and that exemption is reduced by $500 for each $5,000 of additional income, until at an income greater than $50,000 no exemption is granted at all.

The schedule for married taxpayers filing separately calls for a total exemption for those with income not over $2,500 and provides for a reduction in the exemption of $250 for each $2,500 of additional income, up to $25,000. No exemption is granted to such a taxpayer earning more than $25,000.

[3] "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property. The general court may tax income not derived from property at a lower rate than income derived from property, and may grant reasonable exemptions and abatements. Any class of property the income from which is taxed under the provisions of this article may be exempted from the imposition and levying of proportional and reasonable assessments, rates and taxes as at present authorized by the constitution. This article shall not be construed to limit the power of the general court to impose and levy reasonable duties and excises."

uniform rate throughout the commonwealth upon incomes
derived from the same class of property" but authorizes the
General Court to "grant reasonable exemptions and abate-
ments." The issue for our consideration is whether the pro-
posed exemptions are "reasonable exemptions" within the
meaning of art. 44. The constitutional requirement of a
uniform rate of taxation cannot be absolute, because it is
impossible to achieve a uniform effective rate of taxation
where exemptions are allowed. On the matter of exemp-
tions "[t]he Legislature surely has a considerable range of
discretion within the bounds of reason." *Daley* v. *State Tax
Comm'n*, 376 Mass. 861, 865-866 (1978). See *Massachusetts
Teachers Ass'n* v. *Secretary of the Commonwealth*, 384
Mass. 209, 242-243 (1981).

Recently, in *Opinion of the Justices*, 383 Mass. 940
(1981), the Justices indicated that it would not be constitu-
tionally competent under art. 44 to compute an individual's
State income tax liability by applying a flat percentage rate
to the individual's Federal income tax liability. The Justices
said that "we think the requirement of 'uniform rates' in
art. 44 means more than just nominal uniformity. The re-
quirement of uniformity cannot be circumvented by a device
which keeps the rate of tax uniform while graduating the
taxable base." *Id.* at 944. The Justices also noted that "ex-
emptions and deductions may have effects comparable to
effects of graduated rates." *Id.* The Justices were not,
however, directly addressing the issue of reasonable exemp-
tions because the proposed law did not contain a deduction
or exemption.

In 1930, the Justices dealt with the question of the reason-
ableness of exemptions proposed in a pending bill concern-
ing the State income tax. *Opinion of the Justices*, 270 Mass.
593 (1930). That opinion, given fifteen years after the adop-
tion of art. 44, is particularly relevant to the question now
asked of us. The Justices indicated their approval of a bill
that, speaking generally, would have allowed exemptions
and credits of $1,500 to a single person without dependents,
$3,000 to the head of a family or a married person living

with a husband or wife, and $250 for each dependent other than a husband or wife. If the net income of a taxpayer exceeded $10,000, the exemption or credit would be reduced by the amount of the taxpayer's income which exceeded $10,000. *Id.* at 595-596. Speaking of this latter feature, the Justices observed that "[t]here are suitable provisions for adjustments near the border line of $10,000." *Id.* at 598.

In that opinion, the Justices commented on the scope of the provision in art. 44 authorizing "reasonable exemptions." "Those words were designed to vest a considerable discretion in the General Court in determining how [income taxes] ought to be apportioned among all the people to the end that the burdens for the support of government may rest as nearly equally as possible among those able to bear them. The exemptions from the income tax in the proposed bill in varying amounts for unmarried and married persons and those having dependents do not differ in principle from those established by our tax statutes for many years. Such exemptions, though relatively much smaller in amount than those provided in the present bill, have the sanction of legislative and popular usage for a long period of time." 270 Mass. at 599-600. The Justices concluded on the question of the reasonableness of the exemptions by saying: "The exemptions proposed are not so large as to bear on their face indications of want of equality between the inhabitants or of a purpose to penalize or to put an undue weight on one part of the community for the benefit of other parts. The power of exemption implies to some extent the power of discrimination and of classification required by the best interests of society. To say that one having an income of $1,500 per year, or that a husband and wife together having twice that income, shall not be required to contribute from such income to the expenses of government, while approaching to the verge of reasonableness, cannot quite be said to exceed that bound, in our opinion." *Id.* at 601.

Because of the increase in per capita income and the decrease in the value of the dollar since the 1930 *Opinion of the Justices*, the exemptions proposed in House Bill No. 5528

are well within the range of reasonableness noted in 1930.[4] We see no reason for differing with the views expressed in that 1930 opinion. Consideration of the ability to pay is appropriate in establishing exemptions from the income tax. *Opinion of the Justices*, 270 Mass. at 600-601. A gradually decreasing exemption relates more closely to the ability to pay than does an exemption which terminates at a particular level of income.

We should not be understood as endorsing a system of exemptions that would result in a considerable departure from a uniform rate of effective taxation. See *Opinion of the Justices*, 383 Mass. 940, 943-944 (1981). Apart from a relatively minor aspect of the proposed bill which we shall next discuss, the effective rates of taxation under House Bill No. 5528 will not vary greatly among taxpayers, except that taxpayers at the lower ranges of incomes, who may reasonably be regarded as least able to contribute proportionately toward the cost of government, will be taxed at lower effective rates.

So that there may be no doubt about the significance of our answer as it might be thought to bear on the propriety

---

[4] Based on consumer prices, on dollar in 1930 was worth more than five times as much to the consumer as was one dollar in May, 1981. See The Statistical History of the United States — 1976, at 210-211 (U.S. Bureau of the Census), showing that to a consumer a dollar in 1967 was worth one-half of a 1930 dollar; Statistical Abstract of the United States — 1981, at 458 (U.S. Department of Commerce, Bureau of the Census), showing that to a consumer a dollar in May, 1981, was worth 37.2% of a dollar in 1967. Thus, to a consumer a 1930 dollar had a purchasing power of 50 cents in 1967 and 18.6 cents in 1981. The exemptions of the proposed bill are eliminated entirely at levels well within the limits of the bill considered by the Justices in 1930. Similarly, adjusted for the decline in the purchasing power of the dollar, the maximum exemptions of the proposed bill are within the scope of exemptions considered by the Justices in 1930.

Personal income per capita, which has increased since 1930 at a greater rate than the decrease in the purchasing power of the dollar (see The Statistical History of the United States, *supra* at 225, and Statistical Abstract of the United States, *supra* at 429), need not be included in any computation in order tc demonstrate that the proposed bill falls short of the exemptions approved by the Justices in 1930 as "approaching to the verge of reasonableness" but nevertheless within constitutionally permissible limits. *Opinion of the Justices, supra* at 601.

of a graduated income tax under art. 44, we reiterate these
points. The income levels at which the exemptions are fully
eliminated are within the bounds expressed by the Justices
in *Opinion of the Justices*, 270 Mass. 593 (1930), once the
respective income levels are adjusted to reflect changes be-
tween 1930 and now in the purchasing power of the dollar
and increases in per capita income. This being so, the grad-
uated or gradually disappearing exemptions all fall within
the range of general acceptability and, because the gradua-
tions favor those least able to contribute to the cost of gov-
ernment, they in turn are reasonable exeptions. In sum, we
conclude that, although the Constitution of the Common-
wealth requires uniformity in the rate of taxation upon in-
comes derived from the same class of property, absolute
uniformity was not intended because the Constitution per-
mits the Legislature to "grant reasonable exemptions and
abatements." In 1930, the Justices opined that the General
Court has considerable discretion to apportion income taxes
to the end that the tax burdens may rest as nearly equally as
possible among those able to bear them. We agree with
that statement of principle and, just as the Justices of 1930
concluded that the monetary amounts and exemptions then
proposed were constitutionally "reasonable," so we now
conclude that the monetary amounts and scheme of exemp-
tions now proposed are reasonable.[5]

We, therefore, are of the opinion, with one reservation,
that the propounded question should be answered in the af-
firmative. However, there appears to be a significant ques-
tion about the constitutionality of the proposed bill as it
applies to taxpayers whose total income falls in the lowest
ranges of the various brackets. For example, by earning one
more dollar of income a taxpayer may move into the next

---

[5] The proposed bill would grant an exemption of $3,000 for a single tax-
payer, vanishing at $30,000, and $5,000 jointly for married taxpayers,
vanishing at $50,000. The bill considered by the Justices in 1930 proposed
exemptions of $1,500 for single taxpayers and $3,000 jointly for married
taxpayers, with the exemption reduced dollar for dollar by amounts of in-
come in excess of $10,000.

higher bracket and thus be granted a lower exemption. The additional income tax resulting from earning that additional dollar would substantially exceed one dollar. Some appropriate correction might be considered in order to avoid situations of this character, which present a special problem of lack of uniformity. In *Opinion of the Justices*, 270 Mass. 593, 598 (1930), the corrections contained in the bill considered by the Justices were characterized as "suitable provisions for adjustments near the border line." We express no view, however, as to what corrections would be constitutionally appropriate.

Subject to these possible problems, we answer the question, "Yes." House Bill No. 5528 in general provides reasonable exemptions from State income tax under art. 44 of the Constitution of the Commonwealth.

The foregoing answer is submitted by the Chief Justice and the Associate Justices subscribing hereto on the 23rd day of June, 1982.

> EDWARD F. HENNESSEY
> HERBERT P. WILKINS
> JOSEPH R. NOLAN
> FRANCIS P. O'CONNOR

The undersigned Justices of the Supreme Judicial Court, being unable to join with the majority of the Justices in their answer as to House No. 5528, respectfully submit their answer to the question stated in the order adopted by the House of Representatives on February 22, 1982.

We start with the undisputed proposition that one of the effects of the adoption of art. 44 of the Amendments to the Constitution was to preclude the enactment of a so called graduated income tax. *Opinion of the Justices*, 266 Mass. 583 (1929). The prohibition against a graduated income tax arises from the requirement of art. 44 that income taxes "be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." It

has been stated that "[t]hese words . . . confine and limit variation from uniformity within strictly defined bounds. . . . If it had been intended that there might be differences in rates based upon differences in amounts of income received by the taxpayers, . . . it would have been simple to express that purpose in art. 44." *Id.* at 586-587.

The Justices have also previously recognized that "exemptions and deductions may have effects comparable to effects of graduated rates. . . . The requirement of uniformity cannot be circumvented by a device which keeps the rate of tax uniform while graduating the taxable base." *Opinion of the Justices*, 383 Mass. 940, 944 (1981). In our view, House No. 5528 is flawed on this latter ground. If enacted, it would constitute the first step to accomplish by indirection what art. 44 clearly forbids, and the voters of the Commonwealth have clearly rejected by referendum vote on several recent occasions. Accordingly, we believe the answer to your question[1] is, "No."

We disagree with the majority as to their view of the meaning of art. 44, and particularly their interpretation of the *Opinion of the Justices*, 270 Mass. 593 (1930). Nor do we find their effort to sweep House No. 5528 within the scope of the Opinion of 1930 to be other than strained and unpersuasive. We briefly state our reasons.

Although the Legislature is given power by art. 44 to provide for "reasonable exemptions and abatements," no exemption, otherwise reasonable, is valid if the result of such exemptions or abatements "undercuts the dominant requirement of uniformity" of rate of tax on the same class of property. *Massachusetts Teachers Ass'n v. Secretary of the Commonwealth*, 384 Mass. 209, 242 (1981). See also *Opinion of the Justices*, 383 Mass. 940 (1981); *Daley v. State*

---

[1] The question put is:

"Is it constitutionally competent for the General Court to enact House Bill No. 5528 which would provide for a system of low income vanishing exemptions from the state income tax under the provisions of Article XLIV of the Amendments to the Constitution of the Commonwealth of Massachusetts?"

*Tax Comm'n*, 376 Mass. 861 (1978). In *Opinion of the Justices*, 270 Mass. 593 (1930), the Justices were asked, inter alia, whether a personal exemption from tax of $1,500 for a single person without dependents, or twice that exemption for a married person living with husband or wife, would be valid under art. 44. In answering that there would be no barrier to such an exemption, the Justices clearly were operating under a premise which, we think, our brethren today have overlooked. Simply put, the question addressed was whether a certain class of taxpayer should be exempt from income taxation because of inability to pay. To state, as do our brethren, that that *Opinion* stands for the proposition that "[c]onsideration of the ability to pay is appropriate in establishing exemptions from the income tax" is partially true, but eminently misleading. *Supra* at 1228. The Justices, responding in 1930, considered a Commission report which made it clear that the purpose of the then proposed exemption was "to relieve from taxation those whose income is no more than sufficient to support the recipient and his immediate family, and keep within fair bounds the burden upon those whose ability to pay because of inadequate income is low." *Opinion of the Justices*, 270 Mass. at 600-601. To this situation, the Justices responded: "It is to be presumed that this statement of fact is founded upon adequate and fair inquiry impartially made. . . . Reasonable intendments must be made in favor of the results of investigations made by the special commission in the circumstances here disclosed. The exemptions proposed are not so large as to bear on their face indications of want of equality between the inhabitants or of a purpose to penalize or to put an undue weight on one part of the community for the benefit of other parts. The power of exemption implies to some extent the power of discrimination and of classification required by the best interests of society. To say that one having an income of $1,500 per year, or that a husband and wife together having twice that income, shall not be required to contribute from such income to the expenses of government, *while approaching to the verge of reasonableness*, cannot

quite be said to exceed that bound, in our opinion" (emphasis supplied). *Id.* at 601. "It is to be borne in mind that the theory of the bill is that exemptions are granted *solely on the basis of lack of ability to pay the tax*" (emphasis supplied). *Id.* at 603.

No such showing of purpose is made in regard to House No. 5528. Indeed, as the proposed tables set forth, *supra* at 1225 (see also *supra* at 1225 n.2), of the opinion of the majority of the Justices shows, what is proposed is a graduated income base for taxpayers with an income of up to $30,000.

We repeat the language of six of the seven Justices[2] on whom our brethren claim to rely: "An Amendment to the Constitution is a solemn and important instrument. Its words are to be interpreted in the 'sense most obvious to the common understanding at the time.' It is assumed to be capable of comprehension by those qualified to vote. *Attorney General* v. *Methuen*, 236 Mass. 564, 573 [1921]. *Loring* v. *Young*, 239 Mass. 349, 372 [1921]. Applying this test, it seems to us clear that it would not have been the common understanding of the words of the Forty-fourth Amendment by the voters of the Commonwealth in 1915 that power was thereby conferred upon the General Court to levy and collect a tax on incomes graded according to the amount of income received by the taxpayer. The limitations imposed upon absolute freedom of legislative action and the flexibility of action expressly prescribed exclude the idea of want of uniformity in the rate of taxation varying in proportion to the amount of income received by the taxpayer." *Opinion of the Justices*, 266 Mass. 583, 588 (1929).

It seems clear to us that this current proposal goes far beyond the "verge of reasonableness" so carefully circumscribed by the Justices in 1930. We believe House No. 5528, if enacted, would be in violation of art. 44.

---

[2] Justice Field did not participate in the giving of this opinion, but did participate in the opinion given at 270 Mass. 593 (1930).

The foregoing answer is submitted by the Justices subscribing hereto on the 23d day of June, 1982.

PAUL J. LIACOS
RUTH I. ABRAMS
NEIL L. LYNCH