Massachusetts Taxpayers Foundation,Inc. *v.* Secretary of Administration.

MASSACHUSETTS TAXPAYERS FOUNDATION, INC., & others[1] *vs.*
SECRETARY OF ADMINISTRATION & another.[2]

Suffolk. June 10, 1986. — July 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Taxation,* Income tax. *Constitutional Law,* Income tax, Opinions of the
Justices.

A question dealt with in an advisory opinion of the Justices, upon arising
in subsequent litigation, is considered by this court anew, unaffected by
the previous opinion. [44-45]
Provisions of St. 1985, c. 593, § 6, amending G. L. c. 62, § 3, to provide
for personal income tax exemptions which would progressively decrease
as a taxpayer's total income increased, violated the requirement of art.
44 of the Amendments to the Massachusetts Constitution that such a tax
be levied "at a uniform rate throughout the Commonwealth upon incomes
derived from the same class of property." [46-48] WILKINS, J., with
whom HENNESSEY, C.J., joins, dissenting.

·CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on April 16, 1986.

A question of law was reported by *Liacos, J.*

The case was submitted on briefs.

*Marcia Drake Seeler, Wayne S. Henderson, Margaret H.
Marshall, Richard A. Wiley, & Leonard M. Singer* for the
plaintiffs.

*Francis X. Bellotti,* Attorney General, *E. Michael Sloman
& Stephen S. Ostrach,* Assistant Attorneys General, for the
defendants.

---

[1] Twenty-four taxpayers of the Commonwealth.

[2] Commissioner of Revenue.

We acknowledge the amicus brief on behalf of Senator John W. Olver,
the Massachusetts Human Services Coalition, Massachusetts Fair Share,
Service Employees International Union Local 509, the Massachusetts Fed-
eration of Teachers, the Massachusetts Teachers Association, and the League
of Women Voters of Massachusetts.

*Julia K. Johnson & Burton A. Nadler* for John W. Olver & others, amici curiae, submitted a brief.

LYNCH, J. This complaint for declaratory judgment, filed in the Supreme Judicial Court for Suffolk County and reported here by a single justice, seeks a declaration that the provisions of St. 1985, c. 593, § 6, which establish a graduated system of exemptions from the Massachusetts personal income tax are unconstitutional. The case was reported to us by a single justice for our decision of the following question: "Do the provisions of Section 6 of Chapter 593 of the Acts of 1985, which establish a series of personal exemptions from the personal income tax in Massachusetts, violate the proportionality requirement of Part II, Chapter I, Section 1, Article IV or the uniformity requirement of Amendment Article 44, of the Constitution of the Commonwealth?" We answer the question, "Yes."

The plaintiff Massachusetts Taxpayers Foundation, Inc. (MTF), is a nonprofit membership corporation organized under the laws of the Commonwealth.[3] The remaining twenty-four plaintiffs are citizens, residents, and taxpayers of the Commonwealth. The complaint also seeks an order enjoining expenditures in the furtherance of the contested provisions of St. 1985, c. 593, § 6 (the act), and declaring that the previously existing personal exemption provisions of G. L. c. 62, § 3, survive and remain in full force and effect.

Chapter 593 contains extensive revisions to the tax statutes of the Commonwealth. It is a comprehensive statute containing fifty sections which make changes in the personal income, corporate excise, and cigarette excise taxes. It eliminates the 7.5% surtax and purports to simplify and to improve the administration of the Commonwealth's tax system. Section 6 is the only contested provision of the Act.[4] This section contains

---

[3] The standing of MTF to bring this action has not been contested. Since the standing of the remaining plaintiffs is apparent and uncontested, we reach the reported question without deciding or implying that MTF has standing to bring this action.

[4] Section 6 provides as follows: "Paragraph (b) of said section 3 of said chapter 62, as so appearing, is hereby amended by striking out subparagraphs (1) to (3), inclusive, and inserting in place thereof the following three

graduated personal income tax exemptions which are contingent upon the amount of the taxpayer's gross income, marital

subparagraphs:

"(1) In the case of a single person, *(A)(i)* a personal exemption of three thousand eight hundred dollars, if the person's Massachusetts adjusted gross income is less than or equal to six thousand dollars, *(ii)* a personal exemption of three thousand eight hundred dollars minus twenty dollars for each one hundred dollars by which the person's Massachusetts adjusted gross income exceeds six thousand dollars, if the person's Massachusetts adjusted gross income exceeds six thousand dollars but is less than or equal to nine thousand dollars, *(iii)* a personal exemption of three thousand two hundred dollars minus seventeen dollars for each two hundred dollars by which the person's Massachusetts adjusted gross income exceeds nine thousand dollars, if the person's Massachusetts gross income exceeds nine thousand dollars, *(iv)* notwithstanding the provisions of clause *(iii)*, no single person shall receive a personal exemption of less than six hundred dollars, *(B)* an additional exemption of two thousand two hundred dollars if the taxpayer was totally blind at the close of his taxable year, and *(C)* an additional exemption of seven hundred dollars if the taxpayer had attained the age of sixty-five before the close of his taxable year.

"(2) In the case of a husband and wife filing a joint return, *(A)(i)* a personal exemption of eight thousand dollars, if the person's Massachusetts adjusted gross income is less than or equal to ten thousand dollars, *(ii)* a personal exemption of eight thousand dollars minus twenty dollars for each one hundred dollars by which the person's Massachusetts adjusted gross income exceeds ten thousand dollars, if the person's Massachusetts adjusted gross income exceeds ten thousand dollars but is less than or equal to eighteen thousand dollars, *(iii)* a personal exemption of six thousand four hundred dollars minus seventeen dollars for each two hundred dollars by which the person's Massachusetts adjusted gross income exceeds eighteen thousand dollars, if the person's Massachusetts gross income exceeds eighteen thousand dollars, *(iv)* notwithstanding the provisions of clause *(iii)*, no husband and wife filing a joint return shall receive a personal exemption of less than one thousand two hundred dollars, *(B)* an additional exemption of two thousand two hundred dollars for each spouse who was totally blind at the close of his taxable year, and *(C)* an additional exemption of seven hundred dollars for each spouse who had attained the age of sixty-five before the close of his taxable year.

"(3) In the case of a married person filing a separate return, *(A)(i)* a personal exemption of one thousand nine hundred dollars, if the person's Massachusetts adjusted gross income is less than or equal to six thousand dollars, *(ii)* a personal exemption of one thousand nine hundred dollars minus ten dollars for each one hundred dollars by which the person's Massachusetts adjusted gross income exceeds six thousand dollars, if the person's Massachusetts adjusted gross income exceeds six thousand dollars but is less than or equal to nine thousand dollars, *(iii)* a personal exemption of one thousand six hundred dollars minus seventeen dollars for each four hundred dollars by which the person's Massachusetts adjusted gross income

status, and filing status. The graduated personal exemptions for single taxpayers range from $3,800 to $600, the exemption decreasing in a specific amount as income increases. The range of exemptions for a husband and a wife filing a joint return is from $8,000 to $1,200. A different schedule is provided for a married person filing a separate return and certain additional exemptions are provided for the blind and the elderly. For single taxpayers the $3,800 exemption applies if the person's income is $6,000 or less. The exemption then decreases at the rate of $20 for each $100 in adjusted gross income up to $9,000, at which point the exemption is reduced to $3,200. The exemption then further decreases at the rate of $17 for each $200 of adjusted gross income up to approximately $40,000, at which point the exemption is fixed at $600.

A similar decreasing schedule of exemptions exists for joint returns and married taxpayers filing separately. The joint return exemption schedule starts at an income of $8,000 and decreases until it reaches $1,200 for incomes of $80,000 and above.[5] The declining exemption schedule and the increasing no-tax status in the section were designed to give 55% of the proposed tax cut to taxpayers with less than $35,000 of income. Joint Conference Committee of Taxation, Analysis of Agreement, 1985 House Doc. No. 6999.

The decision of the primary legal question raised by this case will affect the vast majority of Massachusetts taxpayers as well as the several branches of government, and is therefore appropriate for resolution in declaratory proceedings. *Andover Sav. Bank* v. *Commissioner of Revenue,* 387 Mass. 229, 232-233 (1982).

---

exceeds nine thousand dollars, if the person's Massachusetts gross income exceeds nine thousand dollars, *(iv)* notwithstanding the provisions of clause *(iii)*, no married person filing a separate return shall receive a personal exemption of less than three hundred dollars, *(B)* an additional exemption of two thousand two hundred dollars if the taxpayer was totally blind at the close of his taxable year, and *(C)* an additional exemption of seven hundred dollars if the taxpayer had attained the age of sixty-five before the close of his taxable year."

[5] The plaintiffs contend that gradations exist within each filing category for 184 separate income brackets for single taxpayers and 387 separate income brackets for married taxpayers.

1. We are not unmindful that § 6 bears some similarity to the bill (House Bill No. 5528) considered by the Justices in *Opinions of the Justices,* 386 Mass. 1223 (1982). A majority of the Justices there advised that the bill which set forth a schedule of vanishing exemptions was constitutionally competent and not in conflict with art. 44. *Id.* at 1230. Even if the act was not significantly different from the bill considered by the Justices, we would not be bound by that opinion. As the court has stated previously: "When called upon, as we are now sitting as a court, to deal again with questions once considered in our advisory capacity, we regard it as our duty to consider the issue anew and to guard against any influence which might arise from the prior advisory consideration of the same questions. See *Perkins* v. *Westwood,* 226 Mass. 268, 271-272 [1917]; *Dodge* v. *Prudential Ins. Co.,* 343 Mass. 375, 379-380 [1961]. Our advisory opinions, as the *Perkins* case indicates, are not 'binding authorities,' but are 'open to reconsideration and revision' (see also *Lowell Co-op. Bank* v. *Co-operative Cent. Bank,* 287 Mass. 338, 345 [1934]) particularly when (as in the present instance) the legislative proposals, once considered in an advisory capacity, have been subsequently modified and clarified." *Massachusetts Hous. Fin. Agency* v. *New England Merchants Nat'l Bank,* 356 Mass. 202, 208-209 (1969).

There are, however, significant differences between the act we now consider and that bill considered by the Justices. The bill provided for a system of vanishing exemptions over a range of income for individual taxpayers of between $3,000 and $30,000; for married taxpayers filing jointly of between $5,000 and $50,000, and for married taxpayers filing separately of between $5,000 and $25,000. 386 Mass. at 1225 & n.2. The act, on the other hand, approximately extends the range of income within which the exemptions vary from $6,000 to $40,000; $10,000 to $80,000; and $6,000 to $43,000, respectively, in the same classifications. See 1985 House Doc. No. 6999. Furthermore, the number of income brackets within which the exemptions differ is substantially greater in the act than in the schedules considered in the bill. For example, for

single taxpayers the bill varied the exemptions in ten categories
while the act varies the exemption in 184 categories of income.

Another feature of the act not found in the bill is that the
exemption disappears at a different rate at the higher range of
income. For example, the single taxpayer's exemption de-
creases at the rate of $20 for each $100 of income up to $9,000
and then decreases at the rate of $17 per $200 of income up
to $40,000. In recommending to the General Court the legis-
lative package that formed the basis of the act, the Governor
informed the Legislature that approximately 85% of the persons
filing tax returns fall in an income class of $50,000 or less.
See 1986 House Doc. No. 1, Figure 5, at 5.

It can be discerned from the legislative history of the act
and its complex scheme of exemptions applicable to very broad
ranges of income that § 6 was intended to tax the same class
of income at different rates rather than to provide reasonable
exemptions from the tax so "that the tax burdens may rest as
nearly equally as possible among those able to bear them."
*Opinions of the Justices,* 386 Mass. at 1229.[6]

---

[6] The Governor's budget recommendations to the General Court for fiscal
year 1987 contain the following statements concerning the tax reform recom-
mendations that were the basis of the act:

"Thanks to a prosperous economy and strong fiscal management, we
have been able to repeal the surtax and enact a package of income tax
reforms. The tax reform act will result in substantial tax relief for all
taxpayers, and will provide the most significant tax reduction to *lower and
middle income taxpayers,* boosting their opportunity to participate in the
Commonwealth's economic prosperity. The package not only cuts taxes
but also improves the fairness and simplicity of our state income tax.

"  .   .   .   .

"Additional Tax Relief For Working Middle-Income People. The tax
reform package further reduces the income tax's burden on those taxpayers
with *limited* ability to pay, by replacing the former uniform personal exemp-
tions with a system of 'declining' exemptions. This reform, which will take
effect beginning in 1987, will sharply cut the income taxes of the working
poor, and will also *provide significant assistance to families and individuals
of moderate means.* This 'declining' personal exemption schedule ensures
that the benefits of tax relief will be distributed more in proportion to need
than simple surtax repeal would have allowed.

"  .   .   .   .

"The tax reform package replaces these uniform exemptions with exemp-
tions that *diminish as personal income increases.* Thus, those taxpayers

2. The defendants devote much of their argument to the proposition that the exemptions of the act are reasonable. There is no question but that the explicit language of art. 44 requires that exemptions from the tax permitted by that article be reasonable. Although art. 44 empowers the Legislature to enact an income tax subject to reasonable exemptions, such a tax must be levied "at a uniform rate throughout the Commonwealth upon incomes derived from the same class of property." As we stated in *Opinion of the Justices,* 383 Mass. 940, 942 (1981): "This 'uniformity' requirement consistently has been interpreted both by the Supreme Judicial Court and others as forbidding the taxation of income from the same class of property at graduated rates, i.e., with the rate of taxation varying with the total amount of income (as, for example, is done by the Federal government)." Moreover, "[t]he 'reasonable exemptions' provision of art. 44 does not authorize special treatment that undercuts the dominant requirement of uniformity in art. 44. See *Opinion of the Justices,* 354 Mass. 792, 794 (1968)." *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 242 (1981). Not only must exemptions be reasonable, therefore, but also they must not conflict with the uniformity requirement. *Id.* "The require-

---

with the least *ability to pay income taxes receive the largest exemptions, while the wealthiest taxpayers, for whom personal exemptions provide relatively insignificant tax relief in any case, receive about the same tax relief they would get from simple surtax repeal.*

"   .   .   .   .

"Additional Tax Relief To The Working Poor And Middle Income Taxpayers. A major factor in ensuring the fairness of the state's tax system is limiting the level of taxation on citizens with *low and moderate incomes* in recognition of their limited ability to afford to pay taxes. Together, the features of the tax reform package represent a dramatic step forward in achieving this goal, by targeting tax relief over and above surtax repeal specifically for the working poor and middle income taxpayers." (Emphasis supplied.) 1986 House Doc. No. 1, at 1-5.

The Joint Conference Committee of Taxation, Summary of Agreement, 1985 House Doc. No. 6999, at 1-2, states: "The effect of these changes on individual taxpayers will vary depending upon income. Lower income taxpayers will receive a larger deduction and upper income taxpayers will receive smaller deductions. The persons benefitting the most from these changes would be low-income families and elderly couples."

ment of uniformity cannot be circumvented by a device which keeps the rate of tax uniform while graduating the taxable base." *Opinion of the Justices,* 383 Mass. at 944.

In 1930, the Justices considered a bill which would have granted an exemption from the income tax to individual and married taxpayers whose incomes did not exceed $1,500 and $3,000, respectively. The stated purpose of the exemption was "to relieve from taxation those whose income is no more than sufficient to support the recipient and his immediate family, and keep within fair bounds the burden upon those whose ability to pay because of inadequate income is low." *Opinion of the Justices,* 270 Mass. 593, 600-601 (1930). The Justices responded that "[t]o say that one having an income of $1,500 per year, or that a husband and wife together having twice that income shall not be required to contribute from such income to the expenses of government, *while approaching to the verge of reasonableness,* cannot quite be said to exceed that bound . . . ." *Opinion of the Justices,* 270 Mass. at 601. "It is to be borne in mind that the theory of the bill is that exemptions are granted *solely on the basis of lack of ability* to pay the tax" (emphasis supplied). *Id.* at 603. Although the Justices relied upon the difference between the value of the dollar today and its value in 1930, as well as increases in per capita income, more is required to demonstrate that the balance between uniformity and reasonableness has been achieved than a mere mechanistic application of economic indices. See *Opinions of the Justices,* 386 Mass. at 1228 n.4. "In 1930, the Justices opined that the General Court has considerable discretion to apportion income taxes to the end that the tax burdens may rest as nearly equally as possible among *those able to bear them*" (emphasis supplied). *Id.* at 1229. That simple legislative plan to exempt from the tax burden those who lacked the ability to pay by means of fixed exemptions was described by the Justices as "approaching the verge of reasonableness." *Opinion of the Justices,* 270 Mass. at 601. Such a plan cannot be equated with the act's intricately conceived exemptions, which are unabashedly intended to apportion tax relief among the

taxpayers based upon their relative ability to pay.[7] Whatever may be the merits of the system commonly described as the graduated income tax, it is prohibited by art. 44. We, therefore, answer that the provisions of St. 1985, c. 593, § 6, which establish a series of personal income tax exemptions from the personal income tax in Massachusetts violate the uniformity requirement of art. 44.[8]

WILKINS, J. (dissenting, with whom Hennessey, C.J., joins). My views remain unchanged on the subject of the relationship between the requirement of art. 44 of the Amendments to the Constitution of the Commonwealth that an income tax be levied at a uniform rate on income derived from the same class of property and the Legislature's right under art. 44 to grant "reasonable exemptions" from income taxation. In *Opinions of the Justices,* 386 Mass. 1223 (1982), I concluded that a taxation bill not meaningfully different from the statute now before us (G. L. c. 62, § 3 [*b*], as appearing in St. 1985, c. 593, § 6) was constitutionally competent. The court's opinion in this case describes differences between the bill the Justices considered in 1982 and the act now before us and, without saying how or why, characterizes these differences as "significant" (*ante* at 44). The differences have no substantial significance warranting a change of opinion concerning the application of art. 44 principles.[1]

There is in art. 44 an inherent and unavoidable conflict between the mandate of uniform rates and the authorization of reasonable exemptions. *Opinions of the Justices, supra* at 1226.

---

[7] See note 6, *supra.*

[8] We do not reach the question regarding the impact of the proportionality requirement of Part II, c. 1, § 3, art. 4, of the Constitution of the Commonwealth.

[1] The greater number of classifications in the act over the number in the 1982 bill tends to reduce the problem of disproportionate additional income tax that results when a taxpayer earns just enough income so as to move into the lower range of a higher bracket. See *Opinions of the Justices, supra* at 1229-1230. The exemption completely disappeared in the 1982 bill, but it does not in the new G. L. c. 62, § 3 (*b*).

Any exemption destroys uniformity. Reasonable exemptions, however, do not destroy the uniformity that art. 44 requires. The court's opinion in this case, however, improperly gives near conclusive effect to the requirement of uniform rates, thus relegating the right to grant reasonable exemptions to insignificance.

I would have thought that this court, following its own precedents, would have expressed deference to the Legislature's judgment as to what exemptions were reasonable in these circumstances. When the Justices furnish an advisory opinion, there is no presumption of the validity of a proposed statute. *Opinion of the Justices,* 345 Mass. 780, 781-782 (1963). Where, however, this court addresses "a constitutional challenge to a tax measure, we begin with the premise that the tax is endowed with a presumption of validity and is not to be found void unless its invalidity is established beyond a rational doubt." *Andover Sav. Bank* v. *Commissioner of Revenue,* 387 Mass. 229, 235 (1982), and cases cited. The court's opinion acknowledges that, in past decisions, we have upheld a flat exemption based on ability to pay. The use of decreasing exemptions, scaling down from a flat exemption which would itself be proper under art. 44, injects a greater element of fairness than would a flat exemption standing alone. In addition, the difference in the effective tax rate due to the exemptions is minor.[2] This is hardly a graduated income tax of the sort that art. 44 plainly forbids. The Legislature's judgment that a minor exemption should be apportioned according to each taxpayer's ability to pay falls in the range of reasonableness within which the Legislature is entitled to act.

---

[2] Considering, for example, the earned income of a single taxpayer (and disregarding any surtax), the person in the highest income tax bracket pays $160 more in income tax (5% of $3,800 less $600) than he would have had to pay without the decreasing exemption.