GREATER BOSTON REAL ESTATE BOARD *vs.* CITY OF BOSTON
& others.[1]

Suffolk. November 2, 1998. - February 5, 1999.

Present: WILKINS, C.J., LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Practice, Civil,* Summary judgment. *Statute,* Construction, Severability, Validity. *Municipal Corporations,* By-laws and ordinances, Rent control. *Rent Control,* Eviction. *Words,* "Tenant."

Chapter 3 of the Ordinances of 1996 of the city of Boston, regulating evictions of tenants in buildings converting to condominiums or cooperatives, exceeded the authority granted to the city by St. 1983, c. 527 [799-802]; and where those invalid portions were too embedded within the remaining arguably valid provisions to be severed, the entire ordinance was invalid [802-804].

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on June 4, 1996.

The case was heard by *E. George Daher,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*John J. Kuzinevich (Lynn A. Moretti* with him) for city of Boston.

*James M. McCreight* for Massachusetts Tenants Organization & others.

*Ieuan G. Mahoney* for the plaintiff.

LYNCH, J. The plaintiff, Greater Boston Real Estate Board, sought a declaration in the Boston Division of the Housing Court Department invalidating Chapter 3 of the Ordinances of 1996 of the city of Boston (ordinance). The plaintiff argued that the ordinance exceeded the authority vested in the city by

---

[1]Massachusetts Tenants Organization, East Boston Ecumenical Community Council, and City Life/Vida Urbana were allowed to intervene as defendants. We do not distinguish among the defendants unless it is required by the context.

St. 1983, c. 527 (enabling act). The parties submitted the case to the judge on cross motions for summary judgment, stipulating that no genuine issue of material fact was in dispute.

The judge declared that the ordinance exceeded the authority granted to the city by the enabling act and further concluded that the invalid elements of the ordinance were too entwined with the rest of the statute to permit the judge to excise them and then to enforce the remainder of the statute. As a result, the judge struck down the ordinance entirely, allowed the plaintiff's summary judgment motion, and denied the summary judgment motions of the defendant and the interveners. The defendant and the interveners appealed, and we granted their application for direct appellate review. We now affirm.

As this case was decided on summary judgment, we review to determine whether the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991).

1. *Scope of the enabling act.* The enabling act provides certain protections to tenants occupying apartments in buildings which are either undergoing condominium conversion or are converted but as yet unsold as condominiums. St. 1983, c. 527, § 4. The enabling act limits its application to tenants who occupied the unit at the time a master deed was filed and tenants who moved in before the initial sale. *Id.* at §§ 3 and 4. Such tenants are afforded protections including notice rights, preeviction lease extensions, first refusal purchasing rights, and relocation assistance. *Id.* at § 4 (*b*)-(*e*).

The enabling act also grants municipalities power to create different tenant protection plans as follows:

> "Any city or town may, by ordinance . . . impose provisions or requirements to regulate for the protection of tenants with respect to the conversion of housing accommodations to the condominium or cooperative forms of ownership and evictions related thereto which differ from those set forth in this act, upon a two-thirds vote of the city council with the approval of the mayor, in the case of a city . . . ."

*Id.* at § 2.

In November, 1994, the Massachusetts electorate voted to

abolish rent control and, as a result, the Legislature adopted G. L. c. 40P.[2] This statute "broadly prohibits any regulatory scheme based upon or implementing rent control," defining rent control as:

> "(*a*) any regulation that in any way requires below-market rents for residential properties; and

> "(*b*) any regulation that is part of a regulatory scheme of rent control as defined in clause (*a*), including the regulation of occupancy, services, evictions, condominium conversion and the removal of properties from such rent control scheme."

G. L. c. 40P, §§ 2, 3.

The Legislature then adopted St. 1994, c. 282, to "establish a uniform statewide policy for ending rent control, as hereinafter defined." *Id.* at § 1. In defining prohibited "rent control," c. 282, § 3 (*e*), identifies and repeals several enabling statutes from which the city had derived authority for previous rent control ordinances. This statute expressly excludes from revocation any local rent control regulation authorized under the enabling act. *Id.*

In sum, in the wake of G. L. c. 40P and c. 282, the sole authority from which the city can currently draw authority to regulate condominium conversions is the enabling act.

2. *Definition of "tenant."* The interveners concede on appeal that the definition of "tenant" contained in the ordinance is overly broad. This concession is well advised because the ordinance applies to tenants taking occupancy after there has been a conversion to condominiums or cooperatives. Because the city, apparently, does not join in this concession, we first turn to this aspect of the case. As we stated at the outset, the city's sole authority for the ordinance is the enabling act. The ordinance purports to grant the city's rent board jurisdiction over past and future condominium conversions.

The enabling act, however, seeks to protect a tenant confronted with "[c]ondominium or cooperative conversion eviction," which is defined in § 3 as:

> "an eviction of a tenant for the purpose of removing such

---

[2]Initially, this statute was enacted as G. L. c. 40O. Pursuant to St. 1997, c. 19, § 10, this statute was redesignated G. L. c. 40P.

tenant from a housing accommodation in order to facilitate the *initial* sale and transfer of legal title to that housing accommodation as a condominium or cooperative unit to a prospective purchaser . . . when *the tenant whose eviction is sought was a resident of the housing accommodation at the time the notice of intent to convert is given*" (emphasis supplied).

The ordinance's definition of the protected class of tenants purports to apply to tenants occupying after the events specified and is, therefore, significantly broader than that of the enabling act and beyond what the enabling act authorizes.

Furthermore, under § 2 of the enabling act, local municipalities may regulate condominium conversions only where the regulation is expressly "for the protection of tenants." By the statute's plain language, municipalities may not regulate condominium conversions for other purposes. The ordinance specifically states, however, that its goal is to protect housing stock:

> "The City Council further declares that . . . pursuant to its powers under St. 1983, c. 527, [the city] hereby establishes certain additional tenant *and unit protections* for housing accommodations which are, or which in the future become, no longer subject to rent control enabling authority, and which have been, or which may in the future be, converted to the condominium or cooperative form of ownership, *so as to preserve a reasonable balance in the city's housing stock and a reasonable supply of rental housing,* particularly for those who are elderly, handicapped, or of low or moderate income, and so as to minimize involuntary displacement as a result of condominium or cooperative conversion and evictions related thereto, that [the ordinance] . . . shall be adopted . . ." (emphasis added).

But protecting units and housing stock does not protect tenants as defined in the enabling act from condominium conversion; rather the protection is afforded to *prospective* tenants. Construing the enabling act as authority to enact ordinances for the protection of occupants at the time of conversion and subsequent tenants as well would permit municipalities to arrogate powers the General Court expressly revoked when it

defined prohibited rent control in St. 1994, c. 282, § 3 (*e*). We, therefore, decline to adopt such an interpretation.

The ordinance also is defective in another way. Section 3(a) of the ordinance makes it unlawful to convert any housing accommodation to condominium or cooperative housing without a removal permit. Section 3(c)(5)(d) of the ordinance states that "[n]o tenant who lives in a housing accommodation for which a removal permit has been granted shall be evicted for the purpose of a condominium or cooperative conversion eviction." The ordinance defines a "[c]ondominium or [c]ooperative [c]onversion [e]viction" as:

> "an eviction of a tenant by a landlord for the purpose of removing such tenant from a housing accommodation in order to facilitate the sale and transfer of legal title to that housing accommodation as a condominium or cooperative unit to a prospective purchaser or an eviction of a tenant by any other person who has purchased that housing accommodation as a condominium or cooperative unit."

*Id.* at § 1(c). Conceivably then, unlike the enabling act, the ordinance would entitle tenants to extensive eviction and rent increase protections merely because they fortuitously rented a unit in a building that was converted to a condominium years before the ordinance was enacted. As the judge correctly noted, this protects tenants whose tenancies may have little or no relationship to a condominium conversion.

The defendants assert that municipalities are entitled to deference in enacting local ordinances pursuant to enabling authority, citing *Grace* v. *Brookline*, 379 Mass. 43, 50 (1979). Conversely, the plaintiff, citing *Greater Boston Real Estate Bd.* v. *Boston*, 397 Mass. 870, 876-877 (1986), contends that where, as here, the enabling legislation is more narrow, closer scrutiny is warranted. We did note:

> "[W]hen an ordinance or by-law has been enacted without authority expressly granted by the Legislature, and is outside . . . the Home Rule Amendment, the ordinance or by-law is valid only if it is necessary to effectuate the legislative intent embodied in the statute relied on as the source of municipal power. A reasonable relationship between the ordinance or the by-law and the statute is not enough."

*Id.* at 877. We need not decide which standard applies, however, because, in applying either, the broad class of tenants protected by the ordinance is unauthorized. None of the parties argues that the ordinance is premised on authority other than the enabling act. Under § 2 of the enabling act, municipalities may enact a "differ[ing]" scheme only where (1) it is designed to protect tenants and (2) this protection relates to condominium conversions and evictions related thereto. The enabling act's purpose was to protect tenants from the hardships associated with conversion, not to protect tenants who move into a unit long after it has become a condominium unit.

We, therefore, conclude that the ordinance exceeds the authority granted in the enabling act.

3. *Severability.* The defendants next contend that the judge erred in not implementing the severability clause found in § 8 of the ordinance. Under this provision, the drafters express their intent that, should a court of competent jurisdiction declare portions of the ordinance invalid, the remainder of the statute should nonetheless remain in force.

The general rule is that "[w]henever various portions of a statute have independent force, thus justifying the inference that the enacting body would have passed one without the other, this court will uphold the remainder of the enactment after the offending portion has been struck." *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 13 (1975), and cases cited (applying State legislation severability principles to local ordinance). But this rule favoring severability has a corollary: If "the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, it will not sever the unconstitutional provision, but will strike the entire statute." *Murphy* v. *Commissioner of the Dep't of Indus. Accs.,* 418 Mass. 165, 169 (1994), quoting *Mayor of Boston* v. *Treasurer & Receiver Gen.,* 384 Mass. 718, 725 (1981).

In the instant case, the valid provisions are too embedded within the invalid portions to stand independently. The breadth of the protected class is in large part due to the definition of "[c]ondominium or [c]ooperative [c]onversion [e]viction" found in § 1(c) of the ordinance. However, as we have noted, § 3 of the enabling act limits its reach to the eviction of certain tenants:

"[A]n eviction of a tenant for the purpose of removing

such tenant from a housing accommodation in order to facilitate the *initial* sale and transfer of legal title to that housing accommodation as a condominium or cooperative unit to a prospective purchaser or an eviction of a tenant by any other person who has purchased a housing accommodation as a condominium or cooperative unit *when the tenant whose eviction is sought was a resident of the housing accommodation at the time the notice of intent to convert is given* to convert the building or buildings to the condominium or cooperative form of ownership pursuant to section four."

The plaintiff points out that the language of the enabling act italicized above is omitted from the ordinance's definition of "[c]ondominium or [c]ooperative [c]onversion [e]viction." Were we to sever this clause, the ordinance would be rife with references to banned but undefined conduct. Indeed, the ordinance devotes an entire section, § 2, to detailing a rigid scheme as to how such evictions are to be treated. Section 2 contains subsections on, among other things, recovery limitations for such evictions, the presumption of condominium eviction, how such presumptions may be rebutted, and rights afforded victims of such evictions. Subsections 3(c)(2)(f) and 3(c)(5)(d) contain similar references to condominium conversion evictions. If only the over-broad definition is excised from the ordinance, § 5 (a) would remain:

> "This ordinance is only intended to delineate and further define the [c]ity's regulation of condominium or cooperative conversions and condominium or cooperative conversion evictions under [the enabling act], and [not to] limit the rights of tenants or any city agency or authority under any other source of law, contract, or agreement which may regulate such conversions or evictions in any type of housing in the [city]."

The statute would thus state that its sole intended purpose was to define a term for which it provides no definition. Such a construction of the ordinance is untenable. *Murphy* v. *Commissioner of the Dep't of Indus. Accs.*, *supra*.

Alternatively, the interveners urge us to construe the term "tenant," as found in § 1(c) of the ordinance, to mean a tenant who occupied housing accommodation at the time such property

was converted. In essence they request that we write into the ordinance the missing qualifiers found in the enabling act's definition of condominium conversion eviction. This we decline to do.

The term "tenant" is expressly defined elsewhere, in § 1(r) of the ordinance, as a "tenant, subtenant, lessee, sublessee, or other person, entitled under the terms of a rental housing agreement to the use and occupancy of any housing accommodation." Thus, to construe "tenant" narrowly in the context of § 1(c) would require us either to rewrite or to strike § 1(r).

The defendants cite no authority in which we rewrote, rather than excised, an invalid provision from an otherwise valid ordinance. This distinction is vital. We therefore agree with the judge's conclusion that redrafting the ordinance is a task exclusively within the purview of the mayor and city council.

Because we conclude that the ordinance is facially invalid for the reasons discussed above, we do not address the parties' dispute whether the enabling act allows the removal permit system contained in the ordinance. Nor do we address whether, if invalid, such provisions would be severable.

For the reasons discussed, we affirm the judge's decision that (1) the ordinance is outside the scope of the enabling act; and (2) the severability provision in § 8 cannot salvage the remainder of the ordinance.

*So ordered.*