## Fore L Realty Trust *vs.* Joseph McManus.

No. 07-P-473.

Middlesex. February 8, 2008. - April 28, 2008.

Present: Grasso, Brown, & Cohen, JJ.

*Rent Control,* Prohibition. *Condominiums.*

A landlord seeking to evict a tenant from rental premises that were to be converted to the condominium form of ownership could not avoid affording the tenant notice and other protections that the tenant was entitled to under the condominium conversion act, St. 1983, c. 527, § 4(*a*), where the rights afforded to tenants under the condominium conversion act were not a form of municipal regulation of rents prohibited by the rent control prohibition act, St. 1994, c. 368, and remained unaffected by the rent control prohibition act and its codification, as corrected, in G. L. c. 40P. [607-611]

Summary process. Complaint filed in the Waltham Division of the District Court Department on August 22, 2005.

A motion to vacate agreement for judgment and to dismiss the action was heard by *Tobin N. Harvey,* J.

*L. Richard LeClair, III,* for the plaintiff.

*Dina Bernardelli* (*Alexis J. Anderson* with her) for the defendant.

Grasso, J. This is an appeal from a decision of the Appellate Division of the District Court that affirmed a judgment of the District Court in favor of Joseph McManus, the tenant of rental premises being converted to a condominium unit. The sole issue on appeal is whether the statute that abolished rent control, see St. 1994, c. 368 (rent control prohibition act), repealed a previously existing statute that afforded notice and other protections to tenants such as McManus whose rental unit was to be converted to the condominium form of ownership. See St. 1983, c. 527,

§ 4(*a*) (condominium conversion act).[1] We affirm the decision and order of the Appellate Division. We conclude that the rent control prohibition act did not repeal the condominium conversion act and abolish the protections afforded to tenants upon conversion of their rental units to condominium units. By its very terms, the rent control prohibition act prohibits only municipal regulation of rents. The protections afforded to all tenants in § 4(*a*)-(*e*) of the condominium conversion act are not a municipal regulation of rents, and therefore are not abrogated by the rent control prohibition act.

1. *Background.* The underlying facts are undisputed. Joseph McManus is an elderly resident of an apartment on Cherry Street in Waltham managed by Fore L Realty Trust (Fore L), which is also his landlord. McManus has lived in his apartment for approximately fifty years. In 2005, Fore L decided to convert the units in the building where McManus maintains his apartment to condominium units. In June of 2005, Fore L sent McManus a notice to terminate his tenancy, but it did not send him a notice informing him of its intent to convert his unit to a condominium unit and of McManus's rights as set forth in the condominium conversion act.[2] When Fore L sought to evict McManus in a summary process action in the District Court, McManus defended against his eviction on the ground that Fore L had failed to provide the required statutory notice of condominium conversion. Judgment entered in favor of McManus, and the Appellate Division affirmed that judgment, concluding that the repeal of rent control laws did not effect a repeal of statutory requirements on conversion.

Fore L concedes that it did not give McManus the notice required under the condominium conversion act, and that if such notice survived the repeal of rent control, then the judgment in favor of McManus is proper. Fore L argues, however, that such notice is not required, the requirement having been repealed along with rent control. We conclude, favorably to McManus, that the rent control prohibition act did not repeal the requirements of the condominium conversion act.

---

[1]Eligible tenants are afforded protections, including notice rights, pre-eviction lease extensions, first refusal purchasing rights, and relocation assistance. See St. 1983, c. 527, § 4(*b*)-(*e*); *Greater Boston Real Estate Bd.* v. *Boston*, 428 Mass. 797, 798 (1999).

[2]McManus's unit has since been converted to a condominium unit.

2. *Discussion.* In 1994, Massachusetts voters passed by initiative petition St. 1994, c. 368, inserting into the General Laws as a chapter numbered 40O,[3] the "Massachusetts Rent Control Prohibition Act," prohibiting *any city or town* from enacting, maintaining, or enforcing rent control regulations. The voter initiative defines in § 3 of the act the "rent control" that § 4 of the act prohibits a city or town from enacting, maintaining, or enforcing. See G. L. c. 40O, §§ 3, 4; St. 1994, c. 368, §§ 3, 4. Section 3 declares that "[f]or the purposes of this chapter, the term 'rent control' shall mean: (*a*) any regulation that in any way requires below-market rents for residential properties; and (*b*) any regulation that is part of a regulatory scheme of rent control as defined in subsection (*a*), including the regulation of occupancy, services, evictions, condominium conversion and the removal of properties from such rent control scheme. . . ." G. L. c. 40O, § 3.

Concerned with the consequences of an immediate cessation of rent control,[4] the Legislature enacted transition legislation, St. 1994, c. 282, to establish a uniform Statewide policy for ending rent control. By its express terms, the transition legislation was to "apply notwithstanding the provisions of chapter forty O of the General Laws, or any general or special law to the contrary." St. 1994, c. 282, § 1. Among its other transition provisions, St. 1994, c. 282, excluded the condominium conversion act from the definition of rent control and from the scope of the rent control prohibition act. See St. 1994, c. 282, § 3(*e*).[5] While St. 1994, c. 282, included a "sunset provision" that caused

---

[3]As discussed *infra*, the numbering duplicated an already-existing c. 40O and required renumbering.

[4]The rent control prohibition act took effect on January 1, 1995. St. 1994, c. 368, § 2.

[5]Statute 1994, c. 282, § 3(*e*), provides:

> " 'Rent Control' means any controls, restrictions or other regulations imposed *by any city or town* with respect to the rents which may be charged for any residential housing accommodations, the conversion of such housing accommodations to the condominium or cooperative form of ownership, or the removal of such housing accommodations from the rental market, including without limitation those regulatory schemes currently in effect in . . . [Boston, Brookline, and Cambridge] pursuant to . . . [various acts], *but excluding Chapter 527 of the Acts of 1983* [the condominium conversion statute]" (emphasis supplied).

certain of its transitional provisions to expire within one year (on December 31, 1996), the sunset provision did not extend to the provision that excluded the condominium conversion act from the definition of rent control. See St. 1994, c. 282, §§ 3(*e*), 9. In consequence, the provision excluding the condominium conversion act from the definition of rent control did not expire with the sunset provisions of St. 1994, c. 282.

It soon became apparent that the voter initiative that provided for the codification of the rent control prohibition act in c. 40O of the General Laws unwittingly created a numerical anomaly. There already existed a c. 40O of the General Laws that dealt with an unrelated subject. To eliminate the confusion arising from the duplicate numbering, the Legislature enacted corrective legislation that renumbered c. 40O as c. 40P, retroactive to January 1, 1995. See St. 1997, c. 19, § 10. However, the corrective legislation made no reference to the transition legislation's exclusion of the condominium conversion act from the definition of rent control. Rather, the corrective legislation retained the provision of the original rent control prohibition act and stated that "this chapter shall preempt, supersede or nullify any inconsistent, contrary or conflicting state or local law." G. L. c. 40P, § 5, as inserted by St. 1997, c. 19, § 10. See St. 1994, c. 368, § 5.

The crux of Fore L's contention arises from this legislative correction of the numerical anomaly created by the voter initiative. Fore L argues that the definition of rent control in G. L. c. 40P, § 3, and the omission in c. 40P of any reference to St. 1994, c. 282 (and its exclusion of the condominium conversion act from the definition of rent control), establish that in enacting c. 40P, the Legislature intended to abolish not only rent control but also the protections of the condominium conversion act. We disagree. Such an argument misconstrues the scope and purpose of both the rent control prohibition act and the condominium conversion act. Moreover, such an argument attempts, by definitional legerdemain, to transform a purely corrective change in the numbering of a general law prohibiting a city or town from imposing rent control into a repeal by implication of the protections that the condominium conversion act affords to tenants. See *Greater Boston Real Estate Bd.* v. *Boston,* 428 Mass. 797, 799 & n.2 (1999); *Gross* v. *Prudential Ins. Co. of*

*America.*, 48 Mass. App. Ct. 115, 117 n.2 (1999) (redesignation a purely technical amendment in recognition of fact that different c. 40O already existed).

We view the condominium conversion act as a protection of Statewide application, afforded to all tenants, that differs materially from a municipal regulation or ordinance that regulates or requires below-market rents for residential properties. Prior to the abolition of rent control, the condominium conversion act afforded *all* tenants — those paying market rents and those paying controlled rents alike — certain rights and protections upon conversion of the tenant's unit to a condominium unit. We discern nothing in the rent control prohibition act that would provide tenants of units formerly subject to rent control fewer protections upon conversion than those who were not.

Fore L's central argument rests on the flawed premise that the rent control prohibition act, which prohibits a "city or town" from enacting, enforcing, or maintaining rent control of any kind (with certain immaterial exceptions), is in conflict with the protections that the condominium conversion act affords to all tenants. There is no such conflict. The condominium conversion act and the rent control prohibition act are part of a delicately balanced legislative approach to addressing the shortage of affordable housing for the citizens of the Commonwealth.[6] The requirements and purposes of the condominium conversion act

---

[6]As noted in the Declaration of Emergency to the condominium conversion act:

> "[A] serious public emergency exists . . . with respect to the housing of a substantial number of the citizens of the commonwealth. This rental housing emergency has been created by [inter alia] . . . the effect of conversion of rental housing into condominiums . . . . [A]bsent sufficient new rental housing production, such conversion necessarily reduces the stock of rental housing otherwise available. A substantial and increasing shortage of rental housing accommodations, especially for the elderly, the handicapped, and persons and families of low and moderate income, has been and will continue to be the result of this emergency. . . . It is therefore necessary that such emergency be dealt with immediately."

St. 1983, c. 527, § 1. Similarly, the rent control prohibition act declares:

> "The purpose of this chapter is to establish a uniform statewide policy that broadly prohibits any regulatory scheme based upon or implementing rent control . . . . This policy is based on the belief that the public

are related to, but distinct from, the limitation that the rent control prohibition act imposes on a city or town controlling rent at the municipal level. The condominium conversion act is a legislative grant of protections to all tenants of rental units being converted to condominiums. The rent control prohibition act is a legislative restriction on the ability of municipalities to regulate rents at the local level, a factor that may discourage new rental housing production. The condominium conversion act affords tenants notice rights, pre-eviction lease extensions, first rights of refusal, purchasing rights at market price, and relocation assistance. None of these provisions regulates rents. To the extent that § 4(*e*) of the condominium conversion act works a limitation on the rental increases that a landlord may lawfully impose upon a tenant in possession at the time of conversion, such a limitation is a legislative determination of Statewide application and not a prohibited municipal regulation of rent within the ambit of the rent control prohibition act.[7] While §§ 3 and 4 of the rent control prohibition act preclude a *municipality* from regulating rent (including during a period of condominium conversion), no similar prohibition prevents the Legislature itself doing so, either in that act or elsewhere. See *Greater Boston Real Estate Bd.* v. *Boston*, 428 Mass. at 798-802 (invalidating *city* ordinance enacted under condominium conversion act as beyond that statute's enabling act and violative of rent control prohibition act).

We also find unpersuasive Fore L's argument that the definition of rent control in G. L. c. 40P, and the absence of any reference in that corrective statute to the transition legislation and its exclusion of the condominium conversion act from the definition of rent control, signified the Legislature's intention to repeal the requirements of the condominium conversion act along with the prohibition against municipal control of rents. There was no

is best served by free-market rental rates for residential properties and by unrestricted home ownership."

St. 1994, c. 368, § 2.

[7]Statute 1983, c. 527, § 4(*e*), permits a landlord to impose reasonable cost of living rent increases during the applicable notice period, but limits such increases to increases in the consumer price index. Absent such limitation, a landlord might well impose rent increases in an amount designed to displace tenants during the conversion period and thwart the purposes of the condominium conversion act.

need to make reference to the condominium conversion act in the corrective statute. As previously discussed, there is simply no conflict between the condominium conversion act and the rent control prohibition act where the challenged rights are those granted by the Legislature itself and not by cities or towns under the enabling provisions of the condominium conversion act. Contrast *Greater Boston Real Estate Bd.* v. *Boston, supra.* The failure of the Legislature to make specific reference to the transitional legislation in c. 40P does not speak to a repeal of the condominium conversion act by implication. See *Salem & Beverly Water Supply Bd.* v. *Commissioner of Rev.*, 26 Mass. App. Ct. 74, 78 (1988) ("Repeals by implication are disfavored by the appellate courts of the Commonwealth, particularly where general statutes are said to supersede earlier special acts"). Rather, such omission only fortifies the conclusion that the rights in question under the condominium conversion act are not a form of municipal rent control and remain unaffected by the rent control prohibition act and its codification in c. 40P.

*Decision and order of the Appellate Division affirmed.*